**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 14-cv-3392-WJM-KLM

MARK PATTON,

      Plaintiff,

v.

STOLLE MACHINERY COMPANY, LLC,

      Defendant.

_____

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

_____

Plaintiff Mark Patton ("Plaintiff") brings this suit against Defendant Stolle

Machinery Company, LLC ("Defendant") under the Fair Labor Standards Act ("FLSA"),

29 U.S.C. §§ 201 *et seq*.  (ECF No. 1.)  On January 28, 2015, Defendant filed a Motion

to Dismiss for Lack of Jurisdiction under Federal Rule of Civil Procedure 12(b)(1)

("Motion").  (ECF No. 9.)  Defendant alleges that the Court lacks jurisdiction over this

matter because Plaintiff's claims necessarily require the interpretation of an applicable

collective bargaining agreement.  (*See id.*)  For the reasons set forth below, the Motion

is granted.

## I.  LEGAL STANDARD

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction generally

take one of two forms.  A facial attack questions the sufficiency of the complaint as to

its subject matter jurisdiction allegations.  *Holt v. United States*, 46 F.3d 1000, 1002

(10th Cir. 1995).  In reviewing a facial attack, courts accept all well-pled allegations as

true. *Id.* A factual attack, on the other hand, goes beyond the allegations in the complaint and challenges the facts on which subject matter jurisdiction is based. *Id.* at 1003. A factual attack does not permit the court to presume the complaint's factual allegations are true, although the court does have "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.* In such circumstances, the court's reference to evidence beyond the pleadings will not convert the motion to one under Rules 56 or 12(b)(6), unless the jurisdictional question is intertwined with the merits of the case. *Id.* "The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." *Id.*

## II. BACKGROUND

The following facts are gathered from Plaintiff's Complaint. Plaintiff is employed by Defendant as a factory production worker. (ECF No. 1 at 2.) Factory workers at Defendant's facility are required to wear appropriate safety equipment while working on the shop floor. (*Id.* at 3.) Appropriate safety equipment includes steel-toed shoes, long pants, shirts with sleeves, and safety glasses (collectively "Safety Attire"). (*Id.*) Plaintiff alleges he works at least 40 hours per week "on the clock." (*Id.* at 4.) However, Plaintiff spends approximately 20 minutes at the beginning and end of each shift donning and doffing the required Safety Attire. (*Id.*) The roughly 40 minutes of changing time each day is not compensated by Defendant and is "off the clock." (*Id.*) Plaintiff alleges that this amounts to about three hours of uncompensated overtime

2

each week.  (*Id.*)  Thus, Plaintiff claims he is entitled to payment under the FLSA for the

time he spends working, as well as the time he spends donning and doffing his Safety

Attire.  (*Id*. at 4-5.)

Defendant states that Plaintiff, as a factory worker at Defendant's facility, is a

member of a union.  (ECF No. 9 at 1.)  As a result, Plaintiff is subject to a collective

bargaining agreement ("CBA") that Defendant alleges addresses "work hours, overtime,

payroll practices, grievance procedures, and changing of clothing."  (*Id*. at 2.)

Therefore, Defendant argues that to reach Plaintiff's FLSA claim, the CBA must be

interpreted pursuant to the grievance and arbitration process under the Labor

Management Relations Act of 1947 ("LMRA"), 29 U.S.C. §§ 141 *et seq*.  (*Id*.)

Defendant accordingly argues that the Court does not have subject matter jurisdiction to

resolve Plaintiff's FLSA claim unless and until the CBA is interpreted pursuant to the

grievance process under the LMRA.  (*Id*. at 2.)  Plaintiff does not dispute that he did not

resort to the CBA's grievance process prior to initiating this lawsuit.  (ECF No. 14.)

## III.  ANALYSIS

### A.      Converting the Motion

The Court must first determine whether it must convert Defendant's Motion into a

motion for relief under Rule 56 or Rule 12(b)(6).  Defendant's Motion is properly

characterized as a factual attack because both parties have attached materials beyond

the pleadings that do not bear on the sufficiency of Plaintiff's Complaint.  (*See* ECF

Nos. 9, 14.)  These extraneous materials are, rather, offered to support the parties'

respective positions as to the facts on which subject matter jurisdiction depends.  (*See*

*id*.)  Whether the aspects of Defendant's jurisdictional challenge are intertwined with the merits of this matter is a separate question.

The Motion argues that Plaintiff's FLSA claim requires interpretation of the CBA pursuant to the LMRA grievance process.  (ECF No. 9 at 1-3.)  It is true, generally speaking, that a Rule 12(b)(1) motion should be converted "if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." *Holt*, 46 F.3d at 1003.  But here, Defendant alleges that jurisdiction hinges on the proper application of the LMRA, while the FLSA provides the basis of Plaintiff's substantive claim.  And, in any event, the Court's resolution of the jurisdictional question here does not require resolution of any aspect of the substantive FLSA claim.  *See Sizova v. Nat'l Inst. of Standards & Tech*., 282 F.3d 1320, 1324 (10th Cir. 2002). Accordingly, the Court need not convert the Motion and will consider Defendant's jurisdictional arguments under Rule 12(b)(1).

**B.     Plaintiff's FLSA Claim**

The FLSA provides overtime compensation for employees working more than 40 hours per week.  29 U.S.C. § 207(a)(1).  However, to determine an employee's total working hours, "any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee" is excluded. 29 U.S.C. § 203(o).  Defendant argues that pursuant to its longstanding Safety Attire customs and practices under the CBA, Defendant allows employees either to wear

Safety Attire from home, or change into it at the facility on the clock.  (ECF No. 9 at 4-5.)  Thus, according to Defendant, Plaintiff's claim rests on an interpretation of the CBA, which must be resolved through the grievance and arbitration procedures pursuant to Section 301 of the LMRA, 29 U.S.C. § 185, before Plaintiff can proceed to federal court.[1]  (*Id*.)  The Court must accordingly determine whether Plaintiff's FLSA claim is "inevitably intertwined" with the application or interpretation of the CBA.  *Bell v. Se. Penn. Transp. Auth*., 733 F.3d 490, 494 (3d Cir. 2013).

The Supreme Court has recognized that, in submitting a grievance to arbitration, an employee subject to a collective bargaining agreement seeks to assert his rights under that agreement.  *Barrentine v. Arkansas-Best Freight Sys., Inc*., 450 U.S. 728, 745 (1981).  But when an employee files a suit under a federal statute, he "asserts independent statutory rights accorded by Congress" that are "distinctly separate" from his contract rights.  *Id*.  "The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence.  And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums."  *Id*. at 745-46.

---

[1]  The statute provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

However, sometimes an employee's statutory claim is "inevitably intertwined" with the application or interpretation of a collective bargaining agreement. *Bell*, 733 F.3d at 494.  The Third Circuit has held that "while claims resting on the language of [FLSA] section 7(a) are clearly cognizable under that section, we believe that claims which rest on interpretations of the underlying collective bargaining agreement must be resolved pursuant to the procedures contemplated under the LMRA, specifically grievance, arbitration, and, when permissible, suit in federal court under section 301 [of the LMRA]." *Vadino v. A. Valey Eng'rs*, 903 F.2d 253, 266 (3d Cir. 1990).  "Of course, not every dispute concerning employment, or tangentially involving a provision of a [CBA], is preempted by § 301," *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985), such as the "mere referral to the CBA for information," *Vera v. Saks & Co.*, 335 F.3d 109, 115 (2d Cir. 2003).  The claim must instead be "substantially dependent" on an analysis of the CBA.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987).  Thus if an FLSA claim depends on the disputed interpretation of a provision in the applicable collective bargaining agreement, "an employee must first go to arbitration—through the representative union—before vindicating his or her rights in federal court under the FLSA." *Bell*, 733 F.3d at 494.

For example, in *Townsend v. BC Natural Chicken LLC*, the plaintiffs argued they were entitled to unpaid wages for donning and doffing time pursuant to the FLSA.  2007 WL 442386, at *1 (E.D. Pa. Feb. 2, 2007).  The defendants argued that FLSA § 203(o) applied to limit donning and doffing time, and cited a provision in the collective bargaining agreement at issue that provided for "twelve (12) minutes pay per week to

provide for wash up time." *Id*. at *4.  If it was determined during the plaintiff's grievance process that the parties intended "wash up" time to include donning and doffing time, such time could be lawfully excluded from the FLSA overtime calculation.  *See id*.  The court accordingly held that the plaintiffs' FLSA claim must be dismissed because any decision as to the plaintiff's FLSA claim would require the court to also interpret the collective bargaining agreement as a threshold matter.  *Id*.

Plaintiff attempts to distinguish this line of cases by arguing that, unlike *Townsend*, the CBA contains no express provision related to donning and doffing time. (ECF No. 14 at 14.)  Yet Defendant does not appear to claim that any express provision of the CBA governs donning and doffing time.  (*See* ECF No. 9.)  Rather, Defendant submits the affidavit of Plant Manager Kevin Anderson as evidence that Defendant's "long-standing [S]afety [A]ttire customs, practices, and polic[ies] under the CBA" allow employees to wear the Safety Attire from home, or don and doff the Safety Attire at work on the clock.  (ECF No. 9-3 at 2.)  "[A] CBA is more than the sum of its parts.  It comprises express provisions, industry standards, and norm[s] that the parties have created but have omitted from the collective bargaining agreement's *explicit* language." *Fry v. Airline Pilots Ass'n, Int'l*, 88 F.3d 831, 836 (10th Cir. 1996) (emphasis in original). Thus, Defendant argues, Plaintiff's FLSA claim for unpaid donning and doffing time requires an interpretation of the CBA's implicit terms created through custom and practice.  (ECF No. 9 at 11.)  The Court agrees, and notes that FLSA § 203(o) expressly states that changing time may be excluded from measured working time "by the express terms of *or by custom or practice under"* a collective bargaining agreement.

Plaintiff further argues that Defendant's § 203(o) arguments are undermined by its own customs and practices evidence, which indicates that Defendant's practice is in fact to pay for donning and doffing time.  (ECF No. 14 at 15.)  Mr. Anderson's affidavit states in relevant part:

> 5.  Pursuant to long-standing dress code customs, practices, and policy under the CBA, [Defendant] requires its factory production workers to wear long pants of any kind (even sweat pants) and shirts of any kind, with sleeves (short or long-sleeved including t-shirts), to work.  They are allowed to wear this clothing to and from work, or may change into and out of this clothing in the company locker room, on the clock, while being paid for the time.
>
> 6.  Pursuant to long-standing safety attire customs, practices, and policy under the CBA, and the express terms of the CBA, [Defendant] requires its assembly personnel to wear steel-toed shoes and safety glasses while at work.  They are allowed to wear these items from home, or may change into and out of them in the company locker room, on the clock, while being paid for the time. . . .
>
> 8.  Pursuant to the timekeeping custom and practices under the CBA, [Defendant] has various practices surrounding time clock use and payroll practices.

(ECF No. 9-3 at 2.)

Defendant responds that it has not conceded that all changing time is compensable and not excluded by the CBA's customs and practices, only that employees are permitted to change in and out of clothes "on the clock."  (ECF No. 16 at 3.)  However, Plaintiff alleges in his Complaint that he must arrive at the factory 20 minutes prior to the start of his shift, and spends 20 minutes after his shift ends, changing clothes "off the clock."  (ECF No. 1 at 4.)  There is, therefore, a dispute between the parties as to the compensability on donning and doffing time.  The CBA

8

grievance process could reveal that Defendant's custom is to compensate for donning and doffing time within the mandated eight-hour workday "on the clock," but to not pay for such time that occurs "off the clock" in excess of the traditional workday.[2]   Thus, before the Court reached the merits of Plaintiff's FLSA claim, it would be required to interpret the CBA's customs and practices to determine which time Defendant has deemed compensable, and which, if any, it has validly excluded under § 203(o).   The Court finds that the CBA contract interpretation issue here is substantially intertwined with Plaintiff's FLSA claim.

Plaintiff's additional arguments are unavailing.   Plaintiff devotes much of its Response to two lines of cases that do not quite address the issue presented in Defendant's Motion.   First, Plaintiff argues that the CBA is devoid of any notice that Plaintiff's right to federal court adjudication of FLSA claims has been waived through the collective bargaining process, as required by *Wright v. Universal Marine Services Corp.*, 525 U.S. 70 (1998) and its progeny.   (ECF No. 14 at 2.)   In *Wright*, the plaintiff, who was party to a collective bargaining agreement, brought suit under the Americans with Disabilities Act ("ADA") against several stevedoring companies that allegedly refused to hire him because of his disability.   525 U.S. at 74-75.   The defendants argued that the plaintiff could not bring suit because he had not exhausted the grievance process in the collective bargaining agreement.   *Id*.   The Court held that the bargaining agreement's general arbitration clause did not require the plaintiff to arbitrate

---

[2]   The CBA describes a "regularly scheduled workday" as "eight (8) consecutive hours of work, exclusive of a thirty (30) minute unpaid lunch period, and the regularly scheduled workweek will consist of forty (40) hours fo work composed of five (5) consecutive workdays, Monday through Friday."   (ECF No. 9-1 at 5.)

his ADA claim prior to bringing suit, and that such a waiver of the employee's right to a judicial forum for his federal claims must be "clear and unmistakable." *Id.* at 76.

Defendant has not argued that Plaintiff waived his right to litigate his FLSA claim. Rather, Defendant argues that the Court lacks subject matter jurisdiction *at this time* because Plaintiff's FLSA claim rests on an interpretation of the CBA. "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar Inc.*, 482 U.S. at 394. The issue, therefore, is not whether Plaintiff has waived any right to a judicial forum, but whether his FLSA claim is truly independent of the CBA, which the Court has held it is not. The Court accordingly finds this argument inapposite to the matter at bar.

Second, Plaintiff argues that its FLSA claim is not presumed to be arbitrable under the LMRA. There is a presumption that a particular dispute is subject to arbitration in collective bargaining agreements unless a court can say with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the dispute. *See Wright*, 525 U.S. at 78. Plaintiff argues that the CBA's grievance process is limited in scope to the claims arising under the CBA itself, and does not extend to statutory claims. (ECF No. 14 at 8.) But Defendant has not argued that a presumption of arbitrability applies here; the issue is whether the CBA must be interpreted to resolve the FLSA claim. The Court is not persuaded by Plaintiff's alternative arguments and will accordingly dismiss Plaintiff's FLSA claim without

prejudice.[3]

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.      Defendant's Motion to Dismiss (ECF No. 9.) is GRANTED;

2.      Plaintiff's FLSA claim is DISMISSED WITHOUT PREJUDICE; and

3.      The Clerk shall TERMINATE this case.  Defendant shall have its costs.


Dated this 25th day of August, 2015.

BY THE COURT:

William J. Martinez
United States District Judge

---

[3]  The Court also rejects Plaintiff's argument that the CBA's grievance and arbitration provisions are unenforceable because the Union retains the final decision as to whether an employee's FLSA claim will move forward.  (ECF No. 9.)  The cases cited by Plaintiff, *Shankle v. B-G Maint. Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1234 (10th Cir. 1999) and *de Souza Silva v. Pioneer Janitorial Servs., Inc.*, 777 F. Supp. 2d 198, 206 (D. Mass. 2011), stand for the proposition that where an arbitration provision prohibits the use of a judicial forum as a means of resolving statutory claims, the agreement must provide for an accessible, alternative forum in which to bring those claims.  Plaintiff has not shown that the CBA prevents him from asserting his statutory rights in a judicial forum, and the Court does not read the grievance and arbitration provision to operate as a waiver of Plaintiff's right to do so.  For similar reasons, Plaintiff has not shown that the grievance process is insufficient to serve the "remedial and deterrent" function of federal statutes.  Finally, the Court is not convinced that the grievance and arbitration provision is so narrow as to preclude resolution of Plaintiff's claim insofar as it relates to the CBA, which clearly defines hours of work, overtime, and pay periods.  (ECF No. 9-1 at 5-6.)